**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Ewin Oscar Martinez

    v.                                                    Case No. 14-cv-231-LM

United States of America,
G. Brown, J. Hess, and
Captain Galletta


**REPORT AND RECOMMENDATION**


    Ewin Oscar Martinez, a former inmate in the Federal
Correctional Institution in Berlin, New Hampshire ("FCI-
Berlin"), has sued Lieutenant Gary Brown, Lieutenant Jeremy
Hess, and Captain Andrew Galletta, in a <u>Bivens</u> action,[1] and has
sued the United States under the Federal Tort Claims Act, 28
U.S.C. §§ 2671-80 ("FTCA").  Martinez's claims arise from
injuries he claims to have received as a result of: (1) Lt.
Brown's use of excessive force against him while transporting
him to FCI-Berlin; and (2) excessive force inflicted on him by
Capt. Galletta and Lt. Hess while he was incarcerated at FCI-
Berlin.  Before this magistrate judge for a report and
recommendation are: (1) Martinez's motion for partial summary

---

[1] <u>See</u> <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of
Narcotics</u>, 403 U.S. 388 (1971).

judgment; (2) defendants' motion for summary judgment; and (3) Martinez's motion to amend his complaint.  Each motion has been opposed.  For the reasons that follow, Martinez's summary judgment motion and his motion to amend should be denied, and defendants' motion for summary judgment should be granted.

<u>**Martinez's Motion for Summary Judgment**</u>

Martinez moves for partial summary judgment on grounds that defendants: (1) have not challenged the facts he recited in his complaint or the amount of damages he seeks; and (2) did not challenge the report and recommendation in which this magistrate judge recommended the denial of defendants' motion to dismiss. Those are not valid grounds for a grant of summary judgment in plaintiff's favor, and his motion should be denied for the reasons stated in defendants' objection.

<u>**Martinez's Motion to Amend**</u>

Several weeks after defendants filed their motion for summary judgment, Martinez filed what the court construes to be a motion to amend his complaint.  In it, Martinez claims that Lt. Brown retaliated against him for complaining about the excessive force that Lt. Brown allegedly used against him.

Specifically, Martinez claims that Lt. Brown retaliated against him by using a device called the "black box" to restrain his hands while transporting him from one prison to another.  In addition, Martinez accuses Lt. Hess of retaliating against him for complaining about Lt. Brown's alleged use of excessive force and did so by making false charges against him with the intention of having him placed in the Special Housing Unit ("SHU") and by verbally harassing him.  According to Martinez, he suffered a severe anxiety attack as a result of those retaliatory acts.  Defendants object on grounds that Martinez's motion is untimely, and they also argue that the motion does not allege facts that are any different from those alleged in the three documents that constitute the operative complaint in this case.  Martinez's motion to amend should be denied.

Under the circumstances of this case, Martinez may amend his complaint "only with [defendants'] written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Defendants have not given their written consent, but "[t]he court should freely give leave when justice so requires" id.  Even under that standard, however, "there are myriad reasons that might justify the denial of a motion for leave to amend, including undue delay, repeated failure to cure deficiencies, or futility."  United States ex

rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 195 (1st Cir. 2015)

(citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  With regard

to futility, the court of appeals has explained:

> "[I]f the proposed amendment would be futile because,
> as thus amended, the complaint still fails to state a
> claim, the district court acts within its discretion
> in denying the motion to amend."  Boston & Me. Corp.
> v. Hampton, 987 F.2d 855, 868 (1st Cir. 1993); see
> also Glassman v. Computervision Corp., 90 F.3d 617,
> 623 (1st Cir. 1996) (finding that "'[f]utility' means
> that the complaint, as amended, would fail to state a
> claim upon which relief could be granted").

Abraham v. Woods Hole Ocean. Inst., 553 F.3d 114, 117 (1st Cir.

2009).

Martinez's proposed amendment would be futile.  In his

response to defendants' objection to his motion to amend,

Martinez explains that one purpose of his motion to amend is to

add a new cause of action.[2]  He describes that cause of action

this way:

> Petitioner . . . tried to exhaust the BOP's Remedy
> Procedure, in plain exercise of his First Amendment
> Rights [to] free speech; and the defendants cruelly
> conduced [sic] plaintiff to feel desperate, and he
> collapsed by losing consciousness and falling to the
> floor.  The medical report heavily support[s] that
> event: plaintiff was in a high risk to die.

---

[2] He also says that his amendment clarifies how much,
precisely, he is seeking in punitive damages from each of the
defendants, but because defendants are entitled to summary
judgment, for reasons described in the section that follows,
Martinez's clarification gives the court no cause to grant him
leave to amend his complaint.

Pl.'s Resp. (doc. no. 55 at 2).  As additional facts supporting his new cause of action, Martinez identifies: (1) use of the so-called black box; (2) the lack of a satisfactory prison job; and (3) manipulation of his medical records and/or his central file.

By order dated September 4, 2014, doc. no. 11, Judge McCafferty approved a recommendation to dismiss the First Amendment retaliation claim Martinez asserted in his original complaint.  That claim included allegations that Lt. Hess made false claims against Martinez, for the purpose of having Martinez placed in SHU, as well as allegations of verbal harassment by Lt. Hess.  Thus, to the extent that Martinez's motion to amend relies upon similar allegations, it is necessarily futile; Judge McCafferty has already ruled that those allegations are insufficient to state a retaliation claim. As for the allegations that Martinez presents for the first time in his motion to amend, pertaining to the "black box," his prison work assignments, and alleged manipulation of his prison records, those allegations, like the ones in Martinez's original complaint, are de minimis adverse actions, see Starr v. Dube, 334 F. App'x 341, 342 (1st Cir. 2009), and, as a consequence, are insufficient to support a retaliation claim, see Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  Because Martinez's

complaint, as amended, would fail to state a claim on which relief can be granted, his motion to amend should be denied as futile. See Abraham, 553 F.3d at 117.

### Defendant's Motion for Summary Judgment

All that remains for consideration is defendants' motion for summary judgment. That motion should be granted.

### A. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Ponte v. Steelcase Inc., 741 F.3d 310, 319 (1st Cir. 2014) (quoting Cortés-Rivera v. Dept. of Corr., 626 F.3d 21, 26 (1st Cir. 2010)); see also Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must "view[] the entire record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Winslow v. Aroostook Cty., 736 F.3d 23, 29 (1st Cir. 2013) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

"The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila

v. Corp. de P.R. para la Diffusión Púb., 498 F.3d 9, 12 (1st
Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d
5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh the
evidence and determine the truth of the matter but to determine
whether there is a genuine issue for trial." Noonan v. Staples,
Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal
quotation marks omitted).

"The nonmovant may defeat a summary judgment motion by
demonstrating, through submissions of evidentiary quality, that
a trialworthy issue persists." Sánchez-Rodríguez v. AT&T
Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012) (quoting
Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)).
Thus, "[c]onclusory allegations, improbable inferences, and
unsupported speculation, are insufficient to establish a genuine
dispute of fact." Travers v. Flight Servs. & Sys., Inc., 737
F.3d 144, 146 (1st Cir. 2013) (quoting Triangle Trading Co. v.
Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)).  "Rather,
the party seeking to avoid summary judgment must be able to
point to specific, competent evidence to support his [or her]
claim." Sánchez-Rodríguez, 673 F.3d at 9 (quoting Soto-Ocasio
v. Fed. Ex. Corp., 150 F.3d 14, 18 (1st Cir. 1998)) (internal
quotation marks omitted).

**B.** **Background**

Defendants attached six declarations to their memorandum of
law, including declarations from defendants Galletta, Brown, and
Hess.  Martinez filed an objection, doc. no. 49, but he attached
no evidentiary material.  On November 19, 2015, this Magistrate
Judge issued an order granting Martinez additional time "to file
. . . a properly supported objection to defendant's motion for
summary judgment . . . in accordance with Rule 56 [of the
Federal Rules of Civil Procedure] and LR 56.1."  Order, doc. no.
53 at 1-2.  Martinez responded by filing an unsworn memorandum
of law that includes numerous factual allegations that are
unsupported by any record citations.  To that memorandum, he
attached various documents, none of which is attached to an
affidavit or any other form of verification.  In other words,
Martinez has produced no evidence to oppose defendants' summary
judgment motion in a manner that comports with Rule 56 or LR
56.1(b).  Accordingly, "[a]ll properly supported material facts
set forth in [defendants'] factual statement [are] deemed
admitted."  LR 56.1(b).  Those facts form the basis of this
section.

On May 13, 2013, Lt. Brown had the duty of transporting 40
inmates, by bus, from the Metropolitan Detention Center in

Brooklyn, New York, to FCI-Berlin.  Martinez was one of the first three inmates processed for transport.  After another corrections officer placed Martinez in hand restraints, Lt. Brown placed him in standard leg restraints.  At that time, Martinez did not complain about how they fit him.

After Martinez had been placed in his restraints, another inmate was placed in so-called "big boy" leg restraints. Martinez then asked to have "big boy" leg restraints, and yelled that the restraints he had been given were too tight.  Lt. Brown adjusted Martinez's leg restraints, found them to be fitting correctly, and asked another corrections officer to check them again, to make sure they fit correctly.  That officer checked the restraints and put Martinez back into the holding cell. Martinez continued to insist that he needed larger leg restraints.

Martinez's leg restraints were checked again, by Lt. Jason Reis-ElBara, before the inmates boarded the bus.  Lt. Brown saw Lt. Reis-ElBara check Martinez's restraints and tell him that they fit him properly.  Lt. Reis-ElBara does not specifically recall interacting with Martinez, but does recall checking on the fit of one inmate's leg restraints, at the request of Lt. Brown.  He did do by placing his little finger between the cuff

and the inmate's skin, and determined that the restraints fit
correctly.  During the bus ride, Lt. Brown did not hear Martinez
complain to him, or to anyone else, that his leg restraints were
too tight.  Lt. Reis-ElBara, who also rode the bus, testified
that he did "not recall any inmate on that transport complaining
of ill-fitting cuffs."  Reis-ElBara Decl. (doc. no. 47-2) ¶ 10.
Upon arrival at FCI-Berlin, Lt. Brown did not observe that any
inmate required assistance leaving the bus, and he did not
observe that Martinez's feet or ankles were blue or swollen.
Like Lt. Brown, Lt. Reis-ElBara did not observe that any inmate
on the bus from Brooklyn required any additional assistance to
get off the bus or walk into the prison building.

When Martinez and his fellow inmates arrived at FCI-Berlin
on May 14, they were given a medical evaluation.  Health systems
specialist Malcolm Bradford conducted Martinez's intake
examination.  While Bradford has no personal recollection of his
encounter with Martinez, he completed a form titled "Health
Screen," which he attached to his declaration.  Under the
heading "Current Painful Condition," the Health Screen lists
"chronic low back pain," Bradford Decl., Attach. 1 (doc. no. 47-
4) at 3.  It says nothing about foot or ankle pain.  Under the
heading "Health Problems Newly Identified During This

Encounter," nothing is listed.  <u>See</u> <u>id.</u> at 4.  Thus, while the
Health Screen form offered the person completing it two
opportunities to note complaints of an injury such as the one
Martinez claims in this action, no such complaint was recorded.

On June 28, 2013, Capt. Galletta and Lt. Hess responded to
a medical emergency in Martinez's cell in the Special Housing
Unit.  That emergency was called in at 1:41 p.m.  When Capt.
Galletta and Lt. Hess got to Martinez's cell, they found him
unresponsive.  Medical personnel arrived shortly thereafter.
Once Martinez's cellmate was placed in handcuffs, Martinez was
pinned to the floor and placed in handcuffs, with his hands
behind his back.  Martinez asked to have his hands placed in
front of him.  Lt. Hess told Martinez that BOP policy required
that he be restrained from behind, and Capt. Galletta agreed.

After he was handcuffed, Martinez was placed on a gurney
for transport to Medical Services, which is located about 100
feet down a hallway from SHU.  At first, Martinez sat on the
gurney.  When he laid down face up, he complained that the
weight of his body was hurting his hands, due to the handcuffs.
Lt. Hess told Martinez that he was free to sit up or lay on his
side, to alleviate the pain.  Lt. Hess has testified that it
took five minutes or less to transport Martinez from his cell to

Medical Services.  At Medical Services, Martinez's cuffed hands
were placed in front of him.  Capt. Galletta has testified that
Martinez had his hands cuffed behind his back "for no longer
than three to four minutes."  Galletta Decl. (doc. no. 47-6) ¶
11.

Martinez was examined at Medical Services by Kans Lewis, a
nurse practitioner.  Lewis has no personal recollection of his
interaction with Martinez, but indicates that it is his general
practice to examine an inmate's hands when he is brought to
Medical Services, to check for circulation problems.  The
"Clinical Encounter" form Lewis completed after he examined
Martinez does not indicate any such problems.  That form lists
the encounter date as "06/28/2013 14:07."  Lewis Decl., Attach.
1 (doc. no. 47-8) at 1.

Based upon the foregoing, Martinez claims that Lt. Brown
violated the Eighth Amendment by using excessive force against
him when he failed to provide him with "big boy" leg restraints
for the 12-hour bus ride from Brooklyn to FCI-Berlin on June 13-
14, 2013, and that Capt. Galletta and Lt. Hess violated the
Eighth Amendment by handcuffing him behind his back and forcing
him to lie face-up when he was taken to Medical Services on a
gurney on June 28.  According to Martinez, those actions

12

resulted in lasting injuries to his feet and hands.  He also claims that the United States is liable to him for negligence and/or battery, which are actionable under the FTCA, based upon the conduct of Brown, Galletta, and Hess.

**C.    Discussion**

Defendants move for summary judgment on both Martinez's Bivens claims and his FTCA claims.  The court addresses each cause of action in turn.

1.    The Bivens Claims

Defendants invoke the doctrine of qualified immunity as a defense to Martinez's Bivens claims.  See Matalon v. Hynnes, 806 F.3d 627, 632-33 (1st Cir. 2015) ("qualified immunity shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'") (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  And, indeed, they describe that doctrine in some detail.  Even so, their real argument is that Martinez's Bivens claims fail on the merits.  They are correct.

Bivens establishes, as a general proposition, "that victims of a constitutional violation perpetrated by a federal actor may sue the offender for damages in federal court despite the

absence of explicit statutory authorization for such suits."
Soto-Torres v. Fraticelli, 654 F.3d 153, 157-58 (1st Cir. 2011)
(quoting Ruiz Rivera v. Riley, 209 F.3d 24, 26 (1st Cir. 2000);
citing Wright v. Park, 5 F.3d 586, 589 n.4 (1st Cir. 1993)).
The Eighth Amendment to the United States Constitution prohibits
the infliction of cruel and unusual punishment, which includes
the use of excessive force against prisoners.  See Matthews v.
Vargas, 254 F. App'x 1, 4 (1st Cir. 2007) (citing Whitley v.
Albers, 475 U.S. 312, 327 (1986)).  As the Supreme Court has
explained,

> whenever prison officials are accused of using
> excessive physical force in violation of the Cruel and
> Unusual Punishments Clause, the core judicial inquiry
> is that set out in Whitley: whether force was applied
> in a good-faith effort to maintain or restore
> discipline, or maliciously and sadistically to cause
> harm.

Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); see also Wilkins v.
Gaddy, 559 U.S. 34, 37 (2010).  However, "[t]he Eighth
Amendment's prohibition of cruel and unusual punishments
necessarily excludes from constitutional recognition de minimis
uses of physical force, provided that the use of force is not of
a sort repugnant to the conscience of mankind."  Hudson, 503
U.S. at 9-10 (quoting Whitley, 475 U.S. at 327; citing Estelle

v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted).

In a Report and Recommendation dated May 14, 2015 (doc. no. 23), Martinez was told what he had to prove to establish Eighth Amendment violations based upon the use of leg restraints in May of 2013 and the use of handcuffs in June of 2013.  And an Order dated November 19, 2015 (doc. no. 53), provided Martinez with the federal and local rules governing summary judgment practice, which describe the evidentiary showing that is necessary to stave off summary judgment.

The objection Martinez filed in response is not properly supported because he has made no "submissions of evidentiary quality."  See Sánchez-Rodríguez, 673 F.3d at 9.  Rather, his objection consists almost exclusively of conclusory allegations and unsupported speculation, see Travers, 737 F.3d at 146, such as his repeated allegations that various corrections officers lied in their declarations and that Capt. Galletta ordered staff members in Medical Services not to document injuries Martinez received on the bus to FCI-Berlin or on the gurney to Medical Services.  Thus, so long as the undisputed facts demonstrate that defendants are entitled to judgment as a matter of law, their motion for summary judgment should be granted.

**Transport to FCI-Berlin**.  The undisputed factual record establishes that before Martinez was placed on the bus to FCI-Berlin, several corrections officers checked his leg restraints and found them to fit correctly.  The record also establishes that when Martinez told officers that those restraints were too small, they did not ignore him, but, instead, re-checked them.  The record also establishes that Martinez did not complain about his leg restraints during his bus ride.  Assuming that a prison official would violate an inmate's Eighth Amendment rights by failing to heed complaints about restraints that were too tight, it is undisputed that no such conduct took place in this case.  Accordingly, as to the transport to FCI-Berlin, defendants are entitled to judgment as a matter of law on Martinez's Bivens claim.

**Transport to Medical Services**.  The undisputed factual record demonstrates that when Martinez was placed on a gurney for transport from his cell to Medical Services, he was offered the option of either sitting or lying on his side, to avoid any pain or injury that might result from having his entire body weight rest on his cuffed hands.  So, while it is undisputed that Lt. Hess cuffed Martinez behind his back, and that Lt. Hess and Capt. Galletta turned down Martinez's request to cuff him

16

with his hands in front of him, it is also undisputed that
neither officer forced Martinez to place himself in a position
that put his full body weight on his cuffed hands which,
according to Martinez, is what caused the hand injury he
alleges.[3]  Accordingly, as with the claim arising from Martinez's
transport to FCI-Berlin, defendants are entitled to judgment as
a matter of law on the <u>Bivens</u> claim arising from Martinez's
transport to Medical Services.

>    2.   The FTCA Claims

Martinez's remaining claim is that the United States is
liable to him "under the FTCA, for the negligent use of
excessive force by Brown on May 14, 2013, and Hess and
Gallet[t]a on June 28, 2013."  Report and Recommendation (doc.
no. 8) at 4.  Defendants argue that the United States is
entitled to judgment as a matter of law on grounds of immunity.
Martinez does not address his FTCA claims in his objection to
summary judgment.  In any event, the United States is entitled
to judgment as a matter of law on Martinez's FTCA claims.

---

[3] Moreover, because it is undisputed that Martinez was given
permission to change positions, the amount of time he spent with
his hands cuffed behind him, which he says was longer than Capt.
Galletta says it was, is not a material facts because "it could
[not] affect the outcome of the suit under governing law."
<u>Daniels v. Agin</u>, 736 F.3d 70, 78 (1st Cir. 2013) (citing <u>SEC v.
Ficken</u>, 546 F.3d 45, 51 (1st Cir. 2008)).

"The FTCA permits suits against the [federal] government for torts caused by the wrongful acts of any government employee while acting within the scope of his office or employment." Dominguez v. United States, 799 F.3d 151, 153 (1st Cir. 2015) (citing 28 U.S.C. § 1346(b)(1)); see also 28 U.S.C. § 2674. That said, the court acknowledges that the statement of Martinez's FTCA claim in the August 11, 2014 Report and Recommendation is not as clear as it might be, as the phrase "negligent use of excessive force" suggests two different torts: negligence and battery.  Out of an abundance of caution, and in the interest of giving Martinez every possible benefit of the doubt, the court will address both of those torts in the discussion that follows.

**Negligence.**  Under New Hampshire law, "[t]o recover for negligence, [a] plaintiff must demonstrate that the defendant had a duty to the plaintiff, that [he] breached that duty, and that the breach proximately caused injury to the plaintiff." England v. Brianas, 166 N.H. 369, 371 (2014) (citing Pesaturo v. Kinne, 161 N.H. 550, 557 (2011)).  Assuming that Lt. Brown had a duty to use properly fitting leg restraints on Martinez for the bus ride to FCI-Berlin, and that Capt. Galletta and Lt. Hess had a duty to take precautions to insure that Martinez did not

18

injure himself as a result of being placed in handcuffs while being transported from his cell to Medical Services, defendants have produced evidence that none of the three officers breached those duties.

With regard to the bus ride, defendants have produced evidence that: (1) Lt. Brown checked Martinez's leg restraints and had other officers do so as well; (2) those restraints were the proper size; and (3) Martinez did not complain about them during the bus ride.  With regard to the gurney ride to Medical Services, defendants have produced evidence that Martinez was given the option of sitting up or lying on his side, either of which would have allowed him to avoid putting his whole body weight on his cuffed hands.  Martinez has produced no evidence to the contrary.  Thus, to the extent that Martinez has asserted claims for negligence under the FTCA, the United States is entitled to judgment as a matter of law.

**Battery**.  Under New Hampshire law, "[a] defendant may be held liable for battery if '(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.'"  Rand v. Town of Exeter, 976 F. Supp. 2d

65, 75-76 (D.N.H. 2013) (quoting Hudson v. Dr. Michael J.
O'Connell's Pain Care Ctr., Inc., 822 F. Supp. 2d 84, 94 (D.N.H.
2011); citing United Nat'l Ins. Co. v. Penuche's, Inc., 128 F.3d
28, 32 (1st Cir. 1997); Restatement (Second) of Torts § 13
(1977)).  Martinez's claims are that Lt. Brown subjected him to
offensive physical contact by placing him in leg restraints that
were too tight for him, and that Capt. Galletta and Lt. Hess
subjected him to offensive physical contact by handcuffing him
behind his back and forcing him to assume a position in which
the entire weight of his body rested on his cuffed hands.
Defendants argue that the United States is entitled to immunity
because, under the circumstances of this case, both the use of
leg restraints during Martinez's transport to FCI-Berlin and the
use of handcuffs during his transport to Medical Services were
instances of privileged physical contact.

      Defendants point out, correctly, that "the United States
shall be entitled to assert any defense based upon judicial or
legislative immunity which otherwise would have been available
to the employee of the United States whose act or omission gave
rise to the claim."  28 U.S.C. § 2674.  New Hampshire law
provides that "[n]o person shall incur any civil liability to
another person by taking any action against such person which

would constitute justification pursuant to RSA 627."  N.H. Rev.
Stat. Ann. ("RSA") § 507:8-e.  RSA 627, in turn, provides in
pertinent part:

> A law enforcement officer is justified in using
> non-deadly force upon another person when and to the
> extent that he reasonably believes it necessary to
> effect an arrest or detention or to prevent the escape
> from custody of an arrested or detained person, unless
> he knows that the arrest or detention is illegal, or
> to defend himself or a third person from what he
> reasonably believes to be the imminent use of non-
> deadly force encountered while attempting to effect
> such an arrest or detention or while seeking to
> prevent such an escape.

RSA 627:5, I.

Here, there can be no doubt that it would be reasonable for
a prison guard to believe it necessary to place an inmate in:
(1) leg restraints, while transporting him from one prison to
another, to prevent the inmate from escaping; and (2) handcuffs,
when transporting him from his cell to another part of the
prison, to prevent the inmate from attacking corrections
officers and/or escaping.  Thus, a prison guard would be immune
from liability for battery for using leg restraints or handcuffs
on a prisoner who is being transported because such physical
contact, even if offensive, is privileged.  Assuming, however,
that it would not be reasonable for a prison guard to believe it
necessary to place an inmate in leg restraints that are too

21

small or to force an inmate to lie on top of his own hands when he is wearing handcuffs, defendants have produced evidence that neither of those things ever happened, and Martinez has produced no evidence that they did.  Thus, to the extent that Martinez has asserted claims for battery under the FTCA, the United States is entitled to judgment as a matter of law.

      3.   <u>Summary</u>

      To sum up, defendants are entitled to judgment as a matter of law on all of Martinez's <u>Bivens</u> claims and all of his FTCA claims.

## **<u>Conclusion</u>**

      For the reasons described above, Martinez's motion for partial summary judgment (doc. no. 37) and his motion to amend (doc. no. 50) should both be denied, and defendants' motion for summary judgment (doc. no. 46) should be granted.

      Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  <u>See</u> Fed. R. Civ. P. 72(b)(2).  Failure to file an objection within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>United States v. De Jesús-Viera</u>, 655 F.3d 52, 57 (1st Cir. 2011), <u>cert.</u> <u>denied</u>, 132 S. Ct. 1045 (2012); <u>Sch.</u>

Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st

Cir. 2010) (only issues fairly raised by objections to

magistrate judge's report are subject to review by district

court; issues not preserved by such objection are precluded on

appeal).


_____
Andrea K. Johnstone
United States Magistrate Judge


January 5, 2016

cc:  Ewin Oscar Martinez, pro se
     Michael T. McCormack, Esq.

23